UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE:

                             CASE NO.:   08-75936-ast

EDWARD BRUNS,                       CHAPTER   13

                DEBTOR.
------------------------------------------------------X

**APPEARANCES:**

    Ronald D. Weiss, Esq.
    734 Walt Whitman Road
    Suite 203
    Melville, New York 11747

    Edward A. Bruns
    15 Bench Lane
    Levittown, New York 11756-1802

    Joseph R. Guardino, Esq.
    One Heller Way
    Hempstead, New York 11550

    Rosino Caputo, Esq.
    Nassau/Suffolk Legal Services
    One Heller Keller Way
    Hempstead, New York 11550

    Marianne Derosa, Esq.
    Standing Chapter 13 Trustee
    100 Jericho Quadrangle
    Suite 208
    Jericho, New York 11753

## <u>MEMORANDUM OPINION ON REQUEST FOR ATTORNEYS FEES</u>

### <u>Issues Before the Court and Summary of Ruling</u>

Pending before the Court is the request for the allowance of legal fees of the

Debtor's former attorney, Ronald D. Weiss, Esq. ("Counsel"), and Debtor's request that

Counsel disgorge the fees he has been paid.  For the reasons herein, this Court approves Counsel's request for the allowance of fees in part, and approves Debtor's request for disgorgement in part.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### Procedural History

On October 24, 2008, Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Petition Date"). [dkt item 1]  Debtor was 82 years old when he filed this case.  Counsel filed the petition on Debtor's behalf.  Along with the petition, Debtor filed, *inter alia*, his Schedules and Statement of Financial Affairs ("SOFA").  These Schedules disclose that Debtor was the sole owner of a single family home in Levittown, New York, which Debtor valued at $200,000.00, and against which Debtor listed a mortgage debt of $58,762.00.  The Schedules also disclose that Debtor owned rights to approximately $30,000.00 held by the Nassau County Treasurer as restitution owed by a former attorney in connection with a personal injury case award from 2001.  Counsel listed only secured debts related to Debtor's home, and no priority claims or unsecured claims.  In his Schedule I, Debtor listed $500.00 per month of "Income from real property" (line 8), and $822.00 per month of social security (line 11).  Debtor did not list ownership of a car or list any car payments.

Along with the petition and SOFA of Debtor, Counsel filed his Disclosure of

Compensation of Attorney for Debtor, which disclosed a fee agreement as follows: $1,775.00 as an initial legal fee, plus the $274.00 filing fee then in effect, plus an additional $1,775.00 to be paid to Counsel by the Chapter 13 Trustee from Debtor's pre-confirmation and/or post-confirmation payments. [dkt item 1]  This agreement provided for the scope of services to be rendered to Debtor to include various matters that may arise in connection with his case.  The only stated exclusion was as follows:

> 7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

[dkt item 1]

Along with this Disclosure, Counsel also filed his Statement Pursuant to Local Rule 2017. [dkt item 2]  This Statement described prepetition services as follows:

| | |
|---|---|
| 10/23/08 | Initial interview, analysis of financial condition, etc. |
| 10/24/08 | Preparation and review of Bankruptcy petition |

[dkt item 2]

The amount of time spent on these tasks is not provided.  Finally, this Disclosure stated as follows:

> That my usual rate of compensation of bankruptcy matters of this type is $**3,550.00.**

[dkt item 2]

Counsel did not initially file a Chapter 13 plan, nor provide Debtor's pay statements.  A deficiency notice was issued on October 24, 2008, advising Debtor that these were due to be filed within fifteen (15) days of the petition date. [dkt item 4]  A

plan and the pay statement were filed on November 21, 2008. [dkt items 11,12]

A meeting of creditors under Section 341(a) of the Bankruptcy Code was scheduled for December 9, 2008.

On December 24, 2008, the Chapter 13 Trustee filed a Motion to Dismiss Debtor's case. [dkt item 14]  The trustee alleged a variety of paperwork deficiencies, as well as, *inter alia*, Debtor's failure to attend the December 9 Section 341 meeting, and Debtor's failure to make plan payments.  A hearing on the Trustee's Motion to Dismiss was scheduled for January 8, 2009 ("Hearing").

On January 3, 2009, NTL 2004 ("NTL"), Debtor's primary creditor, joined the Trustee's Motion to Dismiss. [dkt item 15]  Therein, NTL stated that it is a secured creditor of the Debtor as the holder of a tax lien judgment in the amount of $51,762.42. NTL also asserted that, prior to the Petition Date, a judgment of foreclosure and sale had issued against the Debtor, which provided for a foreclosure sale of Debtor's Levittown home.

On January 6, 2009, Counsel filed a letter stating that Debtor did not oppose the Trustee's Motion to Dismiss. [dkt item 16]  As the result thereof, Counsel did not attend the Hearing, and the Motion to Dismiss was granted. On February 5, 2009, this Court entered an Order Dismissing Case. [dkt item 17]  On March 9, 2009, this Court entered an Order to Close Dismissed Case. [dkt item 21]

On March 9, 2009, Debtor filed a Motion to Reopen his case  (the "Motion to Reopen") and sought an emergency hearing thereon. [dkt item 23]  The Motion to Reopen was filed by Nassau/Suffolk Legal Services ("Legal Services") on behalf of

Debtor.  The Motion to Reopen also sought the return of any legal fees paid to Counsel.

In an affidavit signed by Debtor in support of reopening the case, Debtor testified he is

82 years old, and he did tell Counsel on January 6, 2009, that he did not oppose

dismissal of his case. [dkt item 25]  However, he further testified that he called Counsel

back on January 8, 2009, and told him he had changed his mind about dismissal, he

wanted his case to remain open.    According to Debtor, Counsel told him that Counsel

would notify the Court that Debtor opposed dismissal of this case.  Debtor further

testified that he was gathering the funds necessary to make his plan payments from the

$30,000.00 that was being held by the Nassau County Treasurer. [dkt item 25]

This Court then issued an Order to Show Cause, scheduling an emergency

hearing on the Motion to Dismiss for March 24, 2009, at 11:00 a.m. [dkt item 24]

On March 20, 2009, Counsel filed his opposition to the Motion to Reopen. [dkt

item 26].  In his opposition, Counsel directed his thirty-three (33) pages of response only

toward the allegations against him and the request for disgorgement of his fees, and not

to the merits of reopening Debtor's case.  While attacking his client, Counsel did admit

that he was told by Debtor on January 8, 2009, that he did not want his case dismissed.

However, in this lengthy response, Counsel did not indicate if he ever communicated

with the Chapter 13 Trustee about the Debtor's opposition to the dismissal of his case.

In fact, Counsel did not withdraw his letter of no opposition, he did not contact the

Chapter 13 Trustee, nor did he attend the Hearing to oppose dismissal.  Counsel simply

ignored his client's wishes and let the case be dismissed.

Counsel attached two pages of detailed billing records, which do not state a total

number of hours worked, but do state a total value of time incurred of $3,987.50.  He also attempts to justify his fee by, in essence, stating that his efforts prolonged the time before Debtor could have been rendered homeless at the age of 82.

On March 23, 2009, NTL filed its opposition to the Motion to Reopen. [dkt item 27]  NTL's opposition essentially parrots the Chapter 13 Trustee's Motion to Dismiss which had resulted in dismissal of this case.

On March 24, 2009, this Court conducted the hearing on the Motion to Reopen (the "March 24 Hearing").  It was evident to all concerned that Debtor's efforts throughout this case have been to save his home.  His dedication to doing so was evidenced, *inter alia*, by his riding his bicycle from his Levittown home to Counsel's Melville office on two occasions.[1]   It also became evident that Debtor did not have a tenant, and was not receiving $500.00 of monthly rental income as stated on his Schedule I.  Debtor testified that Counsel strongly encouraged him to state he had this rental income even though he did not.

Also at the March 24 Hearing, NTL stated that its lien debt secured by Debtor's house had grown to an amount in excess of $71,000.00.  In response, Debtor offered to pay NTL his $30,000.00 once obtained from the Nassau County Treasurer, and he also offered to redeem his life insurance policy issued through the Department of Veteran's Affairs, which was shown to have a cash value in excess of $20,000.00.  Debtor, with the assistance of the volunteer attorneys from Legal Services, demonstrated his

---

[1]  Although the record is unclear as to the exact dates these bicycle journeys occurred, this Court can take judicial notice that the distance from Levittown to Melville, New York, is no less than 10 miles, if traveling by highway.  Moreover, Debtor's lack of a car may well explain his absence from the December 9, 2008, creditor's meeting in Central Islip, which is approximately 16 miles from Levittown by highway.

diligence in trying to obtain the funds held by the Nassau County Treasurer.

As the result of the March 24 Hearing, this Court entered an Order on April 3, 2009, conditionally reopening the case. [dkt item 29]  In order to have his case reopened, Debtor had to expeditiously obtain the approximately $30,000.00 on deposit with the Nassau County Treasurer and endorse those funds over to NTL.  In addition, by April 16, 2009, Debtor was to send a letter to the Department of Veteran's Affairs, requesting the cash redemption of his life insurance policy and the delivery of such proceeds to the Chapter 13 Trustee, and then the Chapter 13 Trustee was to expeditiously remit $19,000.00 to NTL.  This Court further Ordered that, by April 30, 2009, Debtor must both file an amended Chapter 13 Plan that pays all creditors in full, and, with the assistance of Legal Services, cure the deficiencies outlined in the Trustee's Motion to Dismiss and the Court's Order dismissing this case.  The hearing on the Motion to Reopen was adjourned to May 5, 2009, for the Court to determine Debtor's compliance.

As for Debtor's disgorgement request, Counsel was ordered to file a fee statement by April 30, 2009.  Counsel filed his complete fee statement on April 23, 2009. [dkt item 20]  In his Fee Statement, Counsel states he has expended 19.25 hours of time representing Debtor, incurring $3,987.50 of legal fees.

Debtor timely cured his paperwork deficiencies and filed his Amended Chapter 13 Plan on April 30, 2009. [dkt item 31]  Debtor has otherwise complied with the conditions stated for reopening of his case.  He obtained and delivered the $30,000.00 to NTL and had requested the cash redemption his life insurance policy.

On May 19, 2009, Debtor filed an Affirmation in Support of Refund of Attorney Fees. [dkt item 32].  He reiterated his objections to paying Counsel any fee and repeated his position regarding the alleged rental income.  In fact, Debtor states:

> 6. I had many reservations against filing the bankruptcy action because after the mandatory credit counseling I was made aware by the counselor on phone that a Chapter 13 filing was impossible to get confirmed, since my income barely covered payment for my real estate taxes.
>
> 7. However, Mr. Weiss reassured me that the bankruptcy plan would be confirmed based on my income and if I rented part of my house. I told him that it would be impossible to rent my home because it's in disrepair and it would be illegal to do so. In addition, I refused to sign an affidavit that stated that I had rental income and I refused to find a hypothetical renter to state the same.

[dkt item 32].  This Court makes no finding as to why Debtor listed $500.00 of rental income in his Schedules.

Inexplicably, on June 11, 2009, Counsel filed a Cross Motion For Sanctions for Debtor's Attorney Misconduct under Rule 9011, and a Cross Motion For Sanctions against Rosina Caputo, Esq. and Joseph Gaurdino [sic], Esq. [dkt items 33, 34]  This Court has denied these motions by a separate Memorandum Opinion and Order Denying Cross Motion for Sanctions. [dkt item 36]

## **Legal Analysis**

In a Chapter 13 case, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case. *See* 11 U.S.C. § 330(a)(4)(B).  Compensation is based upon a consideration of the benefit and necessity of such services to the debtor.  The standard for determining compensation of a Chapter 13 debtor's counsel is, therefore, different

than the standard utilized in Chapter 11 cases, as the services of the Chapter 13

counsel need not benefit the estate generally, so long as the services benefit the debtor.

*See* 11 U.S.C. § 330(a)(3).

Bankruptcy Code Section 330(a)(4)(B) provides as follows:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).  The "other factors" referenced in Section 330(a)(4)(B) are set

forth in Section 330(a)(3), which provides:

> In determining the amount of reasonable compensation to be awarded the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> © whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3); *see also In re Anderson*, 362 B.R. 575 (Bankr. E.D.N.Y. 2007)

(addressing chapter 13 attorneys fees under the Bankruptcy Code and other federal statutes).

Counsel bears the burden of proof to demonstrate entitlement to the requested fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *In re Bolton*, 43 B.R.598, 600 (Bankr. E.D.N.Y 1984).  This Court has an obligation to examine the propriety of attorney's fees, regardless of whether an objection is raised. *In re Thorn*, 192 B.R. 52, 55 (Bankr. N.D.N.Y.1995).  In *Thorn*, former Northern District of New York Bankruptcy Court Chief Judge Gerling noted that "when the issues are not complex and the process is straightforward, an attorney is expected to exercise "billing judgment" [citation omitted], and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time." *Id.* at 56 (*citing Hensley*, 461 U.S. at 437); *see also In re Hirsch*, No. 1-02-17966, 2008 WL 5234057, *5 (Bankr. E.D.N.Y. 2008).

Bankruptcy Rule 2017 expressly authorizes the Court to analyze and determine whether any payment made to a debtor's attorney is reasonable or excessive, whether such agreement is made before the order for relief (Rule 2017(a)), or after the order for relief (Rule 2017(b)),[2] so long as such services are "in any way related to the case." FED. R. BANKR. P. 2017.

---

[2] Bankruptcy Rule 2017(b) provides that, after notice and hearing, the court may:

> [D]etermine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

FED. R. BANKR. P. 2017(b).

Additionally, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure implements the standards set forth in Section 330 of the Code:

> Application for Compensation or Reimbursement. An entity seeking interim of final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred, and (2) the amounts requested.

FED. R. BANKR. P. 2016(a). To satisfy this burden, a claimant must justify its charges with detailed, specific, itemized documentation. *In re Bennett Funding Group Inc.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997); *In re Poseiden Pools of Am., Inc.,* 180 B.R.718, 729 (Bankr. E.D.N.Y. 1995), *aff'd*, 216 BR. 98, 100 (E.D.N.Y. 1997).  Billing records must clearly identify each billed discrete task, indicate the date the task was performed, the precise amount of time spent, not to be billed in increments greater than one-tenth of an hour, who performed the task, their level of experience, and that person's hourly rate. *In re Fibermark, Inc.*, 349 B.R. 385, 395 (Bankr. D.Vt. 2006).  Moreover, the records must be detailed enough to enable a court to determine whether the attorneys are claiming compensation for hours that are "redundant, excessive, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Before turning to Debtor's objections in detail, this Court first notes that Counsel's Rule 2017 Statement is deficient.  Rule 2017-1 of the Local Bankruptcy Rules for the Eastern District of New York,  in effect when this case was filed, provides as follows:

Rule 2017-1 DESCRIPTION OF PRE-PETITION SERVICES OF
DEBTOR'S COUNSEL IN CHAPTER 7 OR 13 CASES

Upon the filing of a chapter 7 or 13 case, the attorney for the debtor shall submit
a statement, together with and in addition to the statement required by
Bankruptcy Rule 2016(b), containing:

(I) a description of pre-petition services performed for and on
behalf of the debtor in contemplation of the petition;
(ii) an itemization of the services performed by each member,
associate, or paraprofessional of the firm;
(iii) the time spent in the performance thereof, including the
dates upon which the services were rendered and the time
spent on each date;
(iv) an itemization of expenses incurred by the debtor's
attorney; and
(v) the firm's billing rates for comparable services for each
member, associate or paraprofessional.

E.D.N.Y. LBR 2017-1.  Counsel's Statement fails to identify the time he spent on the

services performed prepetition and the billing rates therefore.

Furthermore, the Local Bankruptcy Rules for the Eastern District of New York

address the obligations of debtor's counsel to represent their clients.  Specifically,

E.D.N.Y. LBR 2090-2, *inter alia*, requires that the attorney of record for a debtor:

[S]hall appear on behalf of the debtor in every aspect of the case,
including, but not limited to . . . defending an adversary proceeding,
contested matter, motion, or application filed against the debtor
during the pendency of the case.

Correspondingly, E.D.N.Y. LBR 2090-2(e) provides, *inter alia*, that:

[A]n attorney of record who fails or refuses without reasonable
excuse to represent the debtor in defending an adversary
proceeding, contested matter, motion or application filed against
the debtor. . . may, after notice and a hearing, be sanctioned
pursuant to this rule and may be ordered to disgorge fees paid in
connection with the case pursuant to Bankruptcy Rule 2017.

Debtor asserts that Counsel did not represent his interests and did not follow through in representing him.  Moreover, Debtor states that Counsel "did not help me devise any plan for chapter 13, which would be successful."  Debtor also disputes a number of Counsel's billing entries and concludes by stating that "Mr. Weiss went through the regular bankruptcy motions to justify his fee, but none of them turned out to be for my ultimate benefit." [dkt item 32]

Debtor's financial condition did not change from the time this case was analyzed by Counsel on October 23, 2008, until the date dismissed by this Court on February 5, 2009.  Further, Counsel stood idly by and let this case be dismissed, despite his client's request to keep this case open.

Counsel's attempts to justify his fee by asserting his services benefitted Debtor by delaying the loss of his home.  These assertions do not justify Counsel's fee in this case, even if true.  Debtor's case was pending for less than 100 days from filing (October 24, 2008) until dismissal (February 5, 2009).  Debtor could have obtained a similar hiatus period by proceeding pro se.  Moreover, if Debtor were not a viable candidate for chapter 13 relief when he walked through Counsel's door, Counsel should have so advised him and refused to file his case.

Further, Counsel's time records reveal he had communicated with Ms. Caputo of Legal Services in January 2009, before this case was dismissed.  Yet, again, Counsel took no action to prevent dismissal of this case.

This Court has determined that the only services performed by Counsel that benefitted Debtor were the preparation and filing of the petition, the Schedules and the

SOFA, as well as the related mandatory documents which were filed or provided to either the Court or the Chapter 13 Trustee.  Even the Schedules, however, were not accurate because Schedule J included $500.00 of rental income Debtor never had, nor ever really contemplated having.  Accordingly, this Court has determined that two (2) hours of paralegal time and one (1) hour of attorney time reflect all the time expended by Counsel which benefitted Debtor.

As for the reasonableness of Counsel's billing rate, his attorney rate of $250.00 per hour for Counsel is commensurate with his skill level and reasonable in relation to rates generally charged in this district.  In addition, the hourly rate of $85.00 for Counsel's paralegal is certainly reasonable in this district.

Counsel's work benefitted Debtor to the extent of a reasonable legal fee of $420.00, plus the filing fee of $274.00, for a total fee of $694.00.  When the allowed amount is subtracted from the amount Debtor paid to Counsel, Counsel is required to disgorge to Debtor the sum of $1,355.00.

Counsel should refund the disgorged amount, here the $1,355.00, directly to Debtor, as provided by Section 329(b) of the Code.[1]  The pre-petition payment of the $1,775.00 was paid by Debtor, and was not to have been paid under a confirmed chapter 13 plan.

---

[1] Section 329(b) provides as follows:
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –
> (1) the estate if the property transferred –
> (A) would have been property of the estate; or
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

11 U.S.C. § 329(b).

**Conclusion**

Therefore, based upon the Court's determination of the services rendered by Counsel that benefitted the Debtor, as set forth above, a fee of $694.00 is reasonable for Counsel in this case.  Counsel will be allowed a reasonable fee of $694.00 and will be ordered to disgorge $1,355.00, directly to Debtor.  All other relief will be denied.  A separate Order hereon will be entered.



Dated: July 2, 2009
Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**